2-13-0761, the people of the state of Illinois, Plaintiff's Appellee, v. Willie Walls, Defendant's Appellant, arguing on behalf of the Defendant's Appellant, v. Mr. Bruce Kirkham, arguing on behalf of Plaintiff's Appellee, v. Ms. Diane Campos. Good morning folks, Mr. Kirkham, you can stop. May it please the court and counsel, good morning your honors, my name is Bruce Kirkham and I represent the Defendant's Appellant, Mr. Willie Walls. Mr. Walls was convicted by a jury of first degree murder for an incident that occurred when he was 16 years old. Following his conviction, he was sentenced by the trial court to a term of 43 years in prison. Now he allegedly committed the offense when he was 16, when he was arrested he was 17, correct? That is correct. There was about a four week period in there. He had his 17th birthday during that four weeks. So he was 16 at the time of the occurrence, 17 at the time he was interrogated by detectives. And at that time, the detectives decided that it would be helpful and advisable to have a youth officer there as an advocate, isn't that correct? Yes, Detective Charles Schultz appeared as the juvenile advocate, supposedly on Mr. Walls' behalf. But now you appear to argue for a more active role for that youth officer while he was there with the defendant, but is that supported? Is that active role supported by any case law? There certainly are two lines of cases, two theories of what the role of the juvenile advocate would be. There's one that's a more active role. Can you keep your voice up? It's hard to hear. Actually a little bit here, but also in the back of the courtroom. Thank you, Your Honor. Is a juvenile officer supposed to be an affirmative advocate who actively participates on behalf of the defendant? Or is his role just to be there as a physical guardian to make sure the defendant's physical needs are met and that he is admonished of his rights? He's certainly not supposed to be there as an active participant in the interrogation of the defendant, correct? That's correct. He is not supposed to be the lead investigator and acting on the juvenile's behalf at the same time. That's impermissible. Our Supreme Court has ruled on that. And by suggesting the one question, I think he wrote on his hand or something, for the other detective to ask, did that take an active role? Is that your position or no? Detective Schlatt says he doesn't recall what he wrote on his hand. They showed him the video of him doing that, and he says his recollection was not refreshed. So what are you going to have for lunch? You know, I don't, you don't know. You know, I certainly think it's a reasonable case that he's participating in the interrogation. At some point he tells, there's no, according to him, there's no conflict of acting as a juvenile officer and also being an investigating officer and participating in the investigation and attempting the police to make a case against Mr. Walls. I mean, that's a conflict right there by Detective Schlatt's own words. And I think that it's reasonable to say if he's acting on the defendant's behalf, why wouldn't he just speak up? You know, why would he be subtle and sly about it by writing on his hand and showing that to his partner, Detective Capilouti? No, the court in Murdoch, the Murdoch case, they found that the police officer was an active participant. The juvenile officer was an active participant. But nonetheless, they found that the juvenile statement was voluntary. Correct. So they went, he went, that police officer in Murdoch went so much farther than Schlatt's would even have gone, even considering that the trial court described this as a hybrid, quote, unquote, hybrid position that Schlatt's was in. He was nowhere near what the police officer, it was in Murdoch, was he? Well, I mean, if we're only talking about writing on his hand and making, then making him a participant in the interrogation, I would say no. But I think Schlatt's duplicity was greater than just writing on his hand. How so? How so? What do you think he did? I think that, first of all, he's having it both ways. He wants to treat Mr. Walls as an adult while he's masquerading as a juvenile officer. He's introduced by Detective Capilouti saying, he's here on your behalf. Detective Schlatt's is here on your behalf. And he's going to, he didn't say he'll be looking out for you. He said, if I ask any questions that he finds inappropriate, he'll intervene, essentially, paraphrasing. Okay, so he's been presented to the defendant as this affirmative advocate, juvenile officer. But at the same time, he's, Detective Schlatt's is not working on the defendant's behalf. He advised him of his rights, did he not? From a juvenile rights form? He did use a juvenile rights form. Let me, if I may, make my point. Sure, go ahead. It's an important point of my argument. You know, there's a question of, did he have, one of the juvenile rights was you had the right to consult with a concerned adult, a parent. And Schlatt says, I didn't attempt to call the defendant's mother because I considered him to be an adult. Okay, so he's wearing two hats, or wanting to have it both ways. He's sitting in that interview room, having been represented as an affirmative advocate on Willie's behalf. Well, at the same time, he's sitting there saying, I'm not going to call his mom, he's an adult. That's a conflict that this court should not allow. Well, his mother had been notified. She knew he was in custody. Isn't that correct? So why did he have to call her? Well, if he's a juvenile, he's required by statute to make reasonable efforts to call her. Do you think he was entitled to those additional juvenile safeguards? Since he was 17, right? Right, and that's one of the questions here, and that's one of the points. Is he or is he not? And, in fact, that allowed the detectives to have it both ways. We can give you the juvenile rights, which is the four standard Miranda rights, plus you have a right to consult with a parent or a concerned adult, and you have to be advised that anything you say can be used against you in adult court if your case is transferred. If he's 16, he will be prosecuted as an adult, so I think you certainly need to tell him that if you make statements now, they can be used against you following transfer. But you have the right to consult with a concerned adult. That's a little more of a gray area. I don't know if an adult needs to be advised of that or not. Are you aware of any authority that would indicate that he was entitled to the additional safeguard? No. With this age discrepancy? Yeah, and it's a very curious factual situation. It's unusual. Yeah, and I've not seen a case that says definitively one way or the other. What about Capilouthi's answer to the defendant's question where the defendant asked, can my case be transferred to adult court? And Capilouthi says it could be transferred after a hearing in juvenile court, and transfer to adult court is always a possibility. Under the facts and circumstances here, what's your position on that? In fact, my position on that is two-part. First, one of the benefits that the police have had in both ways is we'll give him juvenile warnings, which, of course, led him to believe he would be treated as a juvenile, that he was being treated as a juvenile, that he would be prosecuted in juvenile court. In fact, he testified. The detectives told him that prior to the interview. Then by telling him that it was merely a possibility that he could be transferred, that was misleading. You know, Capilouthi is on the record saying, I've been around the block a few times. We did our homework. We've talked to all these witnesses. We have our case lined up. We're sure we had our guy. He was subject to automatic transfer, and he was going to be charged with first-degree murder. To tell him it's merely a possibility that he could be transferred to a dual court perpetuated this notion and this setting the defendant up to believe that he would be treated and prosecuted as a juvenile. Wasn't he transferred previously when he was 13? Yes, he was, but he was 13 at the time. And, you know, we have to go by what he's being told at this point. There's no indication. You know, he indicated he didn't remember being Mirandized at that earlier case. You know, he's in a custodial situation at the police department, and he's going by what these seasoned, highly trained detectives from the Lake County Major Crimes Task Force are telling him and how they're leading him up to the point where he waives his Miranda rights. Were these guys on the task force, or were they Waukegan Police Department? They're Waukegan Police Department, but they are members of the task force. This was a Crimes Task Force case? Yes. Yes, that's my understanding. So let me just, for clarification purposes, the previous case was when he was 13, and it was an attempt murder? I don't recall the exact charge, but it involved a shooting incident. So in that case, there would have been a transfer hearing? Yeah, he was prosecuted as an adult in that case. But there was a transfer hearing, and it was a discretionary transfer on the part of the judge, correct? Okay, I believe so. I mean, the record's pretty silent on that. I mean, I don't have a recollection in the record where it said he was transferred or not, but, I mean, that sounds like a likely scenario of what would have happened. I can't say definitively, yes, but. Nothing in the record on that? Not that I recall. I do know that he was transferred. But because of his age, 16 and then 17 and questioning, it would be if he were charged with murder by the state's attorney, it would have to be, it's a mandatory transfer. Yes, it's a mandatory transfer. There was no discretionary hearing that could be involved in that situation. Correct. It's not a mere possibility after a hearing in a juvenile court. It's mandatory transfer if he's charged with murder. But neither Capilouthi nor Schlatz ever told the defendant that he could not be transferred, did they? That's true. You know what, Glenn? If I may, I'd like to read to you verbatim the quote of Capilouthi's answer. So the defendant says, my case could be transferred. Capilouthi responds, at one point it could be transferred in this case where after a hearing in juvenile court, okay? But at this point, these are your juvenile rights waiver, and just so you understand, that's always a possibility. But the good thing is that we're reading your rights because we're investigating the case. That's what you need to understand, really. Do you understand that? Okay. I mean, his answer is interspersed with this. Let's really focus on what we're doing here, which is giving you your rights. They're not really letting him process that information or consider his answer. I mean, it's a classic diversionary tactic. Is that wrong? Is it wrong for police officers to use trickery or diversionary tactics on a defendant to get a statement? As a general rule, it is not. No. But I would add this caveat to that. It's one thing to say, sir, we've got you on videotape carrying the toaster out of the store under your coat. It's another thing to play games with people's constitutional rights and to make promises about rights and to make representations about your status in the legal system and let you believe that you're going to be treated as a juvenile. No, but they never did that. They never said to him, there's no way you're going to be transferred, did they? They never said, he never said to him, Capilouti, neither Capilouti nor Schless ever said to him, you will not be tried as an adult. No, conceitedly it was much more subtle than that. They simply allowed him to believe that and did nothing. But he had a possibility. A possibility when it was a mandatory transfer when he's charged with murder. I mean, that's downplaying the whole thing, diverting him away from following up the question. A possibility? What do you mean by that? So you think this goes to voluntariness of the statement, correct? Yes, I do. So don't we look at the totality of the circumstances and voluntariness of the statement? Absolutely. That's the standard, the totality of the circumstances. But when you look at the totality of the circumstances, you've got an involuntary statement. Because we've talked about the duplicity of Detective Schless acting as a juvenile officer and being introduced as an advocate on behalf of the defendant. And then he describes his own role as the passive, I'm only there to make sure he gets a Coke, take him to the washroom and not having a confession physically coerced from him. So they've got that dynamic going on. At the same time, Schless is sitting in the interview room going, I'm treating him as an adult outside of this room. I'm not going to call him his mom because he's an adult. Whereas you just got done telling him, Capilouto just got done telling him during Miranda Ward, you have a right as a juvenile to consult with someone. He said he didn't want to. I don't recall that he said that. I don't think he ever affirmatively said, I don't want to talk to her. I don't recall that from the record or from the statement. So, and again, when you add these things up, what's going on here is, you know, the detectives are doing 16 under 17 sitting in our interrogation room. How do we treat him? Well, let's have them both ways. You know, let's let him believe he's 16 and a juvenile will be treated and prosecuted in juvenile court. But then when it suits them to not call a concerned adult, it's like, he's an adult. So we don't have to notify anybody. You know, his mom is trying frantically to track him down. She, you know, was told by a family member she saw him being apprehended on the street. And so she goes to the Waukegan Police Department and tries to find him. And they express no knowledge of his existence. And while he's at the police department being interrogated, it's only after the interrogation is completed do they acknowledge that he's there and allow the mom to see him. Well, I think she went to Lake County Sheriff's Department, too, didn't she? She was going there. And North Chicago Police. Yeah. You know, there was a chase involved during his apprehension. And she testified that she saw him in a Waukegan police squad car. But she also saw, I believe it was North Chicago squad car, present at the scene because, you know, response of different agencies. If I may continue. Mm-hmm. And they say he's not there. Well, I saw a North Chicago police car there. Maybe they took him there. Maybe they moved him to a different car. I think she went to the jail to see if he had been taken to jail. So she's trying to find him, and she's following the clues that she gathered at the scene and trying to piece it together. So was his will overborne? Absolutely. I mean, there's a reason that we have these special rules for juveniles, and that's because they're vulnerable to this kind of manipulation. I mean, this was managed with, I hate to say it, but admirable psychological skill. These detectives knew what they were doing. They let him believe that he was a juvenile. At the same time, they're treating him as an adult. It's all about getting the defendant's signature on the waiver form and conducting the interrogation. Before you sit down, what is our standard of review with respect to reviewing the motion to suppress? Well, the trial court's factual findings are reviewed for. It would be overturned if they're against the manifest way to make evidence. But the ultimate determination is a de novo, should be a de novo review. De novo. Yes. Okay. Anything further? That's it. Thank you. Ms. Campbell, before you get started, I believe it was Judge Shaines in the trial court in this case that described Detective Schlutz's position in that hearing as one of hybrid. He, it seems to me, had a bit of a concern as to Schlutz's role in that room. Why should we not be concerned and take into consideration his position as, well, am I a juvenile officer? Am I not a juvenile officer? Do I follow the rules of being a juvenile officer or do I not? Teetering kind of on whether or not that was ethical. I don't think there's any teetering, and I certainly don't think there's any unethical behavior. There are two lines of cases, and Murdoch is a primary one. And on page 10 and 11 of my brief, I set those out. And the Supreme Court recently in Patterson affirmed that the offices are not required to take an active role in safeguarding the rights of the defendant. It's a more passive guardian. They are there to ensure the comfort of the defendant, that, you know, he has bathroom breaks, sodas, you know, that he's not, that his will is not overborn, as you've pointed out. Certainly, if you view the video, there's no evidence that his will was overborn, if you view that. How about calling the mom, calling the parent? I mean, the concerned woman, the concerned adult. The case law basically is that they are not required to call the parent. That's certainly a factor in determining the voluntariness. In this case, the defendant was given the juvenile rights. One of them is that he can contact his parent. Justice Spence asked about whether he ever, you know, affirmatively did anything. What happened was that the defendant was advised of that right. He acknowledged that he understood it. And at that time, he did not ask for his mother. So is it your position that they treated him as a juvenile at all times with respect to that interview? I think it was more of a hybrid situation. And Detective Capaluti explained at the motion to suppress that he gave it after consulting with some of the superiors because the defendant was 16 at the time of the offense and 17 at the time of confession. And just because one of the questions asked were in his prior 2003 situation, it was initially an attempt murder charge. And then it was bargained down to an aggravated battery. So he had been out from his sentence on that for six months when he committed this offense. Well, I mean, really, in all fairness, do you go in a hybrid, quote, unquote, hybrid situation? I mean, is it fair if you're going to go all in treating him as a juvenile, shouldn't the officers go all in? Or should they be able to pick and choose where they want to treat him as a juvenile, where they want to treat him as an adult? I mean, from my understanding, my reading of the record, it didn't seem like Judge Shaines was proud that this was a hybrid situation. He seemed to have a bit of a concern with a hybrid situation. I think when you look at the case law that says that the officer doesn't have to have an active role, you know, I can't remember at the time of the hearing because Patterson came out well after that, and Patterson's kind of clarified the two lines of cases. So Judge Shaines could conceivably have looked at those two lines of cases and had some concerns. But what's important is that Officer Schlitz didn't really have a hybrid role. In fact, in defense counsel's brief, he argues that Schlitz was entirely too passive and didn't do anything. It's Officer Capiletti who asked all the questions. Apparently, there is one little incident where he wrote a note on his hand, and I have to confess, I had to watch the video several times before I picked it up, so it's not a prominent feature. He did not actively participate in the investigation. All the questions were asked by Detective Capiletti. It's only a 40-minute interview, so there's not a lot of oppressive conditions. If you look at the defendant's demeanor and the officer's demeanor, it's a conversational situation. It's not a confrontational one. If you believe that that was the only interview. I think you have to because this specific fact-finding was made by Judge Foreman, I believe. He did the motion to suppress, and he specifically found at page 635 in the record that the officer's testimony was credible. He specifically found at page 636 that the defendant was not credible. He had the testimony of the two officers. He had the testimony of the defendant himself. He did testify at the motion to suppress, although he didn't testify at the trial. And the mother testified. So I think clearly you need to give him the deference he is entitled to. And he made those specific factual findings. What's your standard of review? The defense counsel was correct that it's a manifest weight of the evidence for the factual findings, and my trial court is given, or the fact-finders are given great deference because they have the opportunity to assess the credibility and resolve the conflicts, and then it's de novo for the legal question. Now, Capilouthi indicated that his normal practice is at the end of the interview to do a summary that the defendant then typically agrees to, you know, and so forth, including questions such as, is this the only, I'm not, this is not verbatim, but the idea being, is this the only interview where you treated okay and all that kind of stuff? Did he do that in this? He did in this case. Okay, and the defendant's response was what? Describe it, if you would, please. I don't know if there was so much a defendant response as I have a specific recollection that at the motion to suppress hearing, Officer Capilouthi stated that because he's done numerous confessions, there's usually a motion to suppress. So at some point in the interview, he makes a statement that this is the only interview we've had, and he did make that statement in this interview, and the defendant did not disagree with that. I'm sorry, I can't remember what page that is at. I believe I may cite it in my brief. Okay, it's on page seven of my brief. Detective Capilouthi explained in his experience, allegations are usually made, and thus he tries to expressly state on the recording that is the only time they spoke. That's at page 336, and he did that in this case. And I referenced the video, and you can see that, and people exhibit number two. It's pages three and 48. Let me ask you this question. Did Capilouthi mislead the defendant by telling him his case could possibly be transferred to adult court? No. A large part of the defendant's argument is based on the alleged pre-interview, which the trial court specifically found did not happen. So when they're in the interview, Detective Capilouthi responds and saying it's always a possibility, and that is certainly true, particularly with this defendant's history. In 2003, when he's three years younger, he had a lesser charge of attempt murder, and that was, in fact, transferred to adult court, and he was prosecuted. After a year? Yes. Well, how is it not definite that he would be transferred if he were charged with murder? I mean, somebody was killed here, not just shot. Okay. At this point, there are many charges filed. It's when the charges are filed. I know the defense counsel argues that there couldn't conceivably be any lesser charge that would not be transferred, but as I pointed out in my brief, it's the state's attorneys who determine the charges. In this case, Detective Capilouthi was getting his information primarily from Mr. Dodd. In my brief at page 8, I point out some of the factors for that. Mr. Dodd was involved in the incident. He changed his story to the police three times. He did not tell them the truth at first. He misidentified the person in the first lineup, and he was using cocaine in March of 2007. There's also the fact that the defendant, I believe this was his statement in the motion to suppress, was claiming that apparently he told Dodd when he jumped into the car after the incident that the defendant had jumped him. So it's not entirely clear that this is, in fact, a murder scenario, and that's going to be the charges for sure. Truth Capilouthi does say, you know, they think it is this guy, but, you know, there's no guarantee, and particularly with the defendant's history where he was younger and had a less serious charge and that was transferred, I don't think there's any chance that he was misled. As you point out, they never tell him that it's guaranteed to be in juvenile court. In fact, when the defendant claims that, the judge specifically finds that not to be true. Any more on that? I think it was Justice Zeno who pointed out that what we have to assess here is whether the defendant's will was overborne. Clearly in the motion to suppress, the trial judge did not find that to be so. His finding is entitled to great deference, but your honors can view the video. And if you view the video, it is very clear. First of all, it's only a 40-minute interview. The trial judge made the finding that the defendant was intelligent. That was at the motion to suppress. Was his IQ ever brought up at that point? Not at that point. That doesn't really occur until sentencing. And for that, we argue in our briefs about what evidence should be considered. Certainly, the defendant got his GED when he was in prison. The trial judge considers the fact that he clearly understands and comprehends English, both reading and writing. That's clear in his advisement of rights on the videotape. The defendant doesn't have any problems comprehending the questions or responding appropriately to Detective Capolitti during the interview. So I think there's no real basis to argue that the defendant was unable or incapable or handicapped in understanding his rights. Certainly, he acknowledges all of the Miranda rights and then the additional juvenile rights. Is your position that he was or was not entitled to the additional safeguards as a 16-year-old would be? I am somewhat on the fence. I suspect, actually, that your honors may know more about the juvenile transfer than I do because the two cases I made in my motion to supplement authority are a 2006 case and a 2008 case, and they are specific juvenile transfer cases. By the way, you made this motion to cite additional authority, and you will allow that motion. But tell me how these cases are relevant to what we're doing here. Both of those cases, one of the arguments is that the defendant received a de facto life sentence. Yeah, but that's not relevant here, is it? The sentence issue is de facto. Oh, they are juvenile transfer cases, so all the case law is set out in that. And I know you authored one, and Judge Spence was concurring on that, and Judge Zinoff concurred on Justice Jorgensen. So the case law is set out there, and I suspect you know more about it than I do. But in this case, I think that Detective Capilouthi was trying to cover his bases, and he said that he had conferred with other people to see, you know, since the defendant was 16 at the time of the incident and 17 at the time of the interview, you know, whether, you know, it is somewhat a hybrid situation. I think that had he not advised the defendant of the additional juvenile rights, we'd now be arguing, or we'd hear an argument that he should have been giving them. You know, now that he did receive them, we're arguing that, you know, some sort of duplicitous action by his part. I think that's a, it sets up a lose-lose scenario for the state in that, where they're wrong if they do and wrong if they don't. But in this case, I think everything in the case law says that that is not a reason to find any confession invalid, and it's certainly not a reason to overturn the decision. It is one of the factors in determining voluntariness, and all of the other factors certainly support that this is a voluntary statement. I'd like to ask another question. Isn't the defendant's sentence, when we touched on it a minute ago, really a de facto life sentence and actually violative of the spirit of the recent United States Supreme Court cases, Miller v. Alabama, Graham v. Florida, and Roper v. Simmons? No. Why not? First, in general, because this Court's decisions in the two cases that I cited reject an argument for a de facto life sentence in cases where the defendants received longer sentences, which were... 75 years, I think. 75, and perhaps even longer. But there are other second-district cases that are far more recent, one authored by Justice Alcott, that disagree with that. Okay. In this particular case, I think certainly not. Because this defendant already had, if you wish to consider it, a Graham-Miller second chance to consider his youth and rehabilitative potential. In 2003, when he had the attempt murder, which was dealt down to an ANG-BAT, and he received a very light sentence, he had been out for six months when he committed this offense. So he has already received that Miller-Graham benefit, if you would, in 2003. I think that this is his second offense. You know, when he's just 16 when he commits it, certainly overcomes any notion that due to his youth, he has great rehabilitative potential. He has already demonstrated very actively that he didn't. But there's nothing that says you only get that benefit once. I mean, there's nothing in the Supreme Court cases. That's your own personal view of this. And I believe you're arguing that the facts of this specific case, namely the fact that he had a prior offense, should lead us not to find that the youth factor was not given enough weight. Is that right? I mean, because obviously he's still a youth. And the research that's been done really points to the fact that until someone is in their 20s, the youth brain doesn't have the maturity that an adult brain does. And youth tend to act impulsively, et cetera. Yeah, I think it is like age 23 where the brain matures. So in this case, if the defendant is stacking up a body every three years, as he has in this case, he can have two and a half or maybe three more bodies stacked up. You also have to consider the public safety factor. And that is one of the major points that the courts have pointed out. And certainly in this case, you do have to consider the public safety factor. If you continue to give defendant minimal sentences or if you let him out when he's 21, given the fact that he's not going to be mature for another two years at 23, there's a great likelihood, given his past history, that you're going to have another body in those two years. So I think in this case, the court has to consider the youth and rehabilitative ability. And I think that Judge Shaines certainly did in this case. He specifically mentions the defendant's youth. But he's also concerned not just with his criminal history, but with his attempt to adversely influence witnesses while he's in jail. That's certainly a major factor in the judge's sentencing decision. Anything else? No. Thank you very much. Mr. Crawford. Let's not lose sight of what's going on here. You know, Capilouthi's asked about his interrogation techniques, and he talks about the John Reed method and how it's confrontational, and we know you did it in that kind of approach. He's like, I choose not to do it that way in this case. I wanted to ingratiate myself with the defendant. I wanted to choose with him and to set myself up in a way that we're just having a little discussion here. That's completely consistent with how this whole scenario unfolded. You've got one cop, Capilouthi, who's going like, we're all on the same team here. We just want to get your side of the story. You're a juvenile. Here's your juvenile rights. And then you've got Schletz, who's in the room going like, well, I'm here just to make sure that he has a coke and doesn't get beat up, and I'm not going to call his parents because he's an adult, even though I've been introduced to the defendant as someone here to look out for him and protect him. No, didn't the mother show up eventually, correct? She did. And then he stopped talking to them after the mother showed up? He had completed his recorded interview, and that's when mother was allowed to visit with him, and that was the end of the proceedings for the evening. So she had been there. It was her third or fourth time. She's a little all over the place between her trial testimony and her suppression hearing testimony. But what comes through clearly is she is really trying hard to find her son and get to him, and she's not allowed to do so. You know, this was a very skillful steering of the defendant to a place where he waived his rights. And, you know, I understand that in the laws, you know, this is the one area of law where we tolerate deception and lying and deceit. You know, everybody else takes an oath to tell the truth, the whole truth, nothing but the truth. We let detectives go in and tell kids who are around the age of 16, 17, eh, maybe he'll be transferred. I mean, he's going to be transferred. It's an automatic transfer case. It's a murder case. Let me call your attention to a couple of cases I know that you're pretty familiar with. But People v. McNitty is one of a number of cases. N. Ray Marvin is another one wherein the courts, different courts, have held that some level of police misrepresentation, even to a juvenile defendant, does not render the defendant's statements involuntary. Those are those misrepresentations, if you look at those cases, were as to factual issues. In other words, really the sufficiency of the evidence and so forth is guilt or innocence. In a case like this where, let's just say for purposes of argument, we assume that there was a bit of, if not a misrepresentation, certainly not a correction of a misunderstanding on the defendant's part, that he would be treated as a juvenile when it looks like it would have been a mandatory transfer. So, in other words, this would be as to a procedural aspect as opposed to guilt or innocence. Does that make any difference in your mind as to whether or not it renders a statement involuntary? It does. We look at the totality of the circumstances and we advise him that he has these rights, but then we allow those things to be clouded and made fuzzy with the use of smoke and mirrors and the mere possibility language. I understand that it's okay to say we've got eyewitnesses to misrepresent the facts of the case to try to break down his resistance to speaking with the detectives. But when you start playing games with these are your rights, this is how the system is going to treat you. This is how, you know, you have the right to have a parent here to consult with you at the same time they're going, well, but we're not going to call her like we would have had to three weeks ago. And she's, you know, been to the lobby three times that night trying to get in. That goes to rights. That's a much more serious brand of deception. You state in your brief that there were several reasons why this statement was not voluntary. One, that the police officers promised him he would be prosecuted as a juvenile. They never promised him he was going to be prosecuted as a juvenile. Never. His testimony that it was, and I understand there's a credibility fine, but I argue in my brief that that's against the manifest way to the evidence. His question that he asked about the transfer, I mean, is completely, perfectly logical with a child who has been previously told you're going to be prosecuted as a juvenile. And then when the cameras are rolling and he's told, and you've got to understand. Oh, I see, so he was told this in the first state. Prior to the beginning of the cameras rolling. You know, so he's like, my case can be transferred. And then we get this. And he's great at this. You know, he'll answer the question and we've been in all these. But the good news is we're reading your, your right there. I mean, that's, that's like, that's like a child saying, can I have a cookie? And you go, look, Barney's on TV. You know, it's diversion. Letting him believe that he's going to be treated by the system as a juvenile. When they all know that that is not what's going to happen. So for those reasons, please find under the totality of the circumstances and Mr. Wall's statement to police was not voluntary. Suppress the statements. Alternatively, please reduce the sentence. Thank you very much. Thank you. This case will be taken under consideration decision rendered in due course, and we are adjourned for the day. Thank you very much.